# IN THE COURT OF APPEALS OF IOWA

No. 22-0578
Filed May 25, 2022

**IN THE INTEREST OF B.B., M.B., and A.K.,**
**Minor Children**

**C.B., Mother,**
        Appellant.
_____


Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.


A mother appeals the termination of her parental rights. **AFFIRMED.**


Nancy L. Pietz, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan, Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.


Considered by Bower, C.J., and Schumacher, and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights.[1] She contends the State failed to make "active efforts" to reunite the family,[2] she should have been granted additional time to achieve reunification, there is not clear and convincing evidence to support the grounds for termination, termination is not in the children's best interests, and her bond with the children mitigates against termination. We affirm.

## I. Background Facts.

These proceedings concern the mother's three children: B.B., born in 2008; M.B., born in 2009; and A.K., born in 2014.[3] The children were removed from the mother's custody in October 2020 because of the mother's unresolved issues of substance dependency, domestic violence, mental health, and homelessness. In December, the children were adjudicated children in need of assistance (CINA), and their out-of-home placement was confirmed.

After disposition and two review hearings, the mother remained noncompliant with requested drug screens and services to address mental-health,

---

[1] The father of A.K. does not appeal the termination of his parental rights. The termination-of-parental-rights petition regarding the father of B.B. and M.B. was dismissed.

[2] The Indian Child Welfare Act (ICWA) requires the State to make "active efforts . . . to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family." Iowa Code § 232B.5(19) (2021). Here, the Northern Arapoho Tribe intervened, recognizing B.B. and M.B. as "Indian child[ren]" because of their father's affiliation with the Tribe. *See id.* § 232B.3(6) (defining "Indian child"). The Tribe supported the termination of the mother's parental rights.

Under chapter 232, the Iowa Department of Human Services (DHS) must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7).

[3] The mother's rights to two older children were terminated previously.

substance-abuse, and domestic-violence issues. The permanency hearing was held in October 2021, after which the juvenile court ordered the State to file termination-of-parental-rights petitions.

The termination trial was held on January 31 and February 8, 2022. The juvenile court observed "very little had changed with the parents' lack of engagement." The court found, "Despite the children having been removed from their care for fourteen months, neither parent had engaged in services to alleviate the need for removal. They continued to demonstrate unregulated mental health and were disruptive during interactions and in court." The court concluded grounds for termination of the mother's rights were proved under Iowa Code section 232.116(1)(f) and (g) (2021), termination was in the children's best interests, and no permissive exception existed to avoid termination. The mother appeals.

## II. Scope and Standard of Review.

> Our review of termination of parental rights proceedings is de novo. We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses. We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence."

*In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (internal citations omitted).

## III. Discussion.

*Error preservation.* At the termination hearing, the mother excused her lack of participation in services, complaining the State did not provide her with needed transportation. She maintains her claim of lack of sufficient efforts "was preserved

for appeal when it was contested at trial and when the notice of appeal was filed." Complaining of the State's lack of efforts at the termination trial is not sufficient to preserve error. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) ("However error is preserved, it is not preserved by filing a notice of appeal. While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation." (footnote omitted)).

With respect to the sufficiency of reasonable (or active) efforts, a parent has "a responsibility to object when they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). And the "objection to the sufficiency of services should be made 'early in the process so appropriate changes can be made.'" *Id.* at 840 (citation omitted). "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.* (citation omitted). Even if we assume the mother's complaint at termination about not being given transportation raises an issue of the sufficiency of the State's efforts, the mother's complaint came much too late to allow changes to be made. Thus, the issue is waived. *See id.*; *see also In re J.D.B.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998) ("Our rules requiring litigants to preserve error for appeal do not conflict with any provision of ICWA or frustrate congressional policy.").

*Extension is not warranted.* The mother asserts, "Exhibits and testimony presented to the court were more than sufficient to allow the court to find that it was reasonably likely that the children could be returned to the custody of their mother within the next six months." We cannot agree.

We adopt the juvenile court's summary of the mother's status in October 2021:

> The [mother] had not complied with requested drug screens and had not engaged in services to address the adjudicatory harm. The mother acknowledged a significant trauma history, but she had not engaged in therapy or any medication management. She reported getting assistance from talking with her peers and friends. She reported that her drug screen would test positive for marijuana. She had not completed a substance abuse evaluation. She reported having a new paramour, who had domestic violence history. She acknowledged that she initially needed help leaving a bad relationship and with housing but denies the need for the children's removal from her care. She continued to struggle with instability.

Several months later, the mother had yet to address any of the issues that prevent her from safely parenting her children.[4]

Given the mother's track record for the last fourteen months, we are unconvinced her parenting ability will improve in the foreseeable future. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). No extension is warranted.

*Ground for termination exists.* "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *Id.* at 774. We focus on section 232.116(1)(f). The mother does not deny the children are all four years of age or older, have been adjudicated CINA, and have been out of her custody for

---

[4] The mother did testify she had located housing with "a retired chef, a truck driver, and a kid that I grew up with." She knew one person's last name but not the others'. There is nothing in the record that would allow us to find the housing is suitable for the children.

more than the statutory period. *See* Iowa Code § 232.116(1)(f)(1)-(3). She challenges only the final element, arguing the children can be returned to her at present. *See id.* § 232.116(1)(f)(4).

On our de novo review, we conclude the mother's claim is without merit and the ground for termination has been proved by clear and convincing evidence. After fourteen months, the mother has yet to engage in services to address any of the issues that brought her and the children to the juvenile court's attention. She rejects the need for mental-health or substance-abuse evaluations or treatment. And she was arrested shortly before the termination hearing for possession of methamphetamine.[5] Consequently, the children could not be returned to the mother's care at the time of the termination hearing without risk of adjudicatory harm. We reiterate: "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests. We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages." *D.W.*, 791 N.W.2d at 707 (internal quotation marks and citations omitted).

*Termination is in the children's best interests.* Keeping in mind our paramount concern is the children's best interests, section 232.116(2) states we are to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical,

---

[5] We acknowledge the mother accepted a plea agreement in which she pleaded guilty to possession of drug paraphernalia and the State dropped the methamphetamine charge. The mother's denial of any need for evaluation under these circumstances indicates she puts her own concerns before the children's needs and safety.

mental, and emotional condition and needs of the child." The best placement for these children is with their grandparents—A.K. with paternal grandparents and B.B. and M.B., to whom ICWA applies, with theirs. They have stability and appropriate care and are receiving needed mental-health assistance in their respective placements. While we recognize the importance of keeping siblings together, *see In re W.M.*, 957 N.W.2d 305, 314 (Iowa 2021), the grandparents have made concerted efforts and indicate an intent to ensure the children continue to have a relationship.

The mother argues guardianships should be established rather than termination of her parental rights. But, guardianships are "not a legally preferable alternative to termination," *see In re A.S.,* 906 N.W.2d 467, 477 (Iowa 2018), particularly where, as here, the mother has repeatedly stated she intends to disrupt the children's placements if they are not with her.

*No permissive exception applies.* The mother contends the strength of her bond with the children mitigates against termination of parental rights. She has failed to carry her burden to establish the "the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c); *see A.S.*, 906 N.W.2d at 476 (noting it is the State's burden to prove grounds for termination exist and it is the parent's burden to prove an exception).

For the reasons stated, we affirm the termination of the mother's parental rights.

**AFFIRMED.**